UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

MARIE MODERWELL                                        )
Administrator of the Estate of LARRY C.               )
JOHNSON deceased,                                     )
15109 Triskett Road, Apartment 2                      )    CASE NO: 1:19-CV-00613
Cleveland, Ohio 44111                                 )
                                                      )
        Plaintiff,                                    )    JUDGE: CHRISTOPHER A. BOYKO
                                                      )
v.                                                    )
                                                      )    **<u>AMENDED COMPLAINT</u>**
CUYAHOGA COUNTY, OHIO                                 )
c/o Department of Law                                 )    (Jury Demand Endorsed Hereon)
2079 E. 9th Street                                    )
Cleveland, Ohio 44115                                 )
                                                      )
and                                                   )
                                                      )
ARMOND BUDISH                                         )
Cuyahoga County Executive                             )
c/o Department of Law                                 )
2079 E. 9th Street                                    )
Cleveland, Ohio 44115                                 )
In his individual capacity                            )
                                                      )
and                                                   )
                                                      )
CLIFFORD PINKNEY                                      )
Cuyahoga County Sherriff                              )
c/o Department of Law                                 )
2079 E. 9th Street                                    )
Cleveland, Ohio 44115                                 )
In his individual capacity                            )
                                                      )
and                                                   )
                                                      )
GEORGE TAYLOR                                         )
Assistant Cuyahoga County Sherriff in charge          )
of the Cuyahoga County Corrections Center             )
c/o Department of Law                                 )
2079 E. 9th Street                                    )
Cleveland, Ohio 44115                                 )

1

In his individual capacity     )
                 )
and             )
                 )
ERIC J. IVEY         )
Cuyahoga County Corrections Center Warden )
c/o Department of Law      )
2079 E. 9th Street       )
Cleveland, Ohio 44115      )
In his individual capacity     )
                 )
and             )
                 )
KENNETH MILLS       )
Director of Cuyahoga County Corrections  )
38749 Amberwood Drive     )
Avon, Ohio 44011       )
In his individual capacity     )
                 )
and             )
                 )
BRANDY CARNEY       )
Cuyahoga County Chief Safety and Protection )
Officer            )
c/o Department of Law      )
2079 E. 9th Street       )
Cleveland, Ohio 44115      )
In her individual capacity     )
                 )
and             )
                 )
THE METROHEALTH SYSTEM    )
DBA METROHEALTH MEDICAL CENTER  )
c/o The Metrohealth System Statutory Agent )
2500 MetroHealth Drive      )
Cleveland, OH 44109      )
                 )
and             )
                 )
THOMAS A. TALLMAN, D.O.    )
Cuyahoga County Director of Correctional  )
Medicine           )
c/o The Metrohealth System     )
2500 MetroHealth Drive      )

2

Cleveland, OH 44109                              )
                                                 )
and                                              )
EDUCARE MEDICAL STAFFING, LLP                    )
3494 Washington Blvd.                            )
University Heights, Ohio 44118                   )
                                                 )
and                                              )
                                                 )
LORI TRUE                                        )
Cuyahoga County Corrections center nurse         )
and/or medical staff                             )
c/o Department of Law                            )
2079 E. 9th Street                               )
Cleveland, Ohio 44115                            )
                                                 )
and                                              )
                                                 )
ROBERT MOSHER                                    )
Cuyahoga County Corrections center nurse         )
and/or medical staff                             )
c/o Department of Law                            )
2079 E. 9th Street                               )
Cleveland, Ohio 44115                            )
                                                 )
and                                              )
                                                 )
DIANE LESSMAN                                    )
Cuyahoga County Corrections center nurse         )
and/or medical staff                             )
c/o Department of Law                            )
2079 E. 9th Street                               )
Cleveland, Ohio 44115                            )
                                                 )
and                                              )
                                                 )
KRISTINA CASHIN                                  )
Cuyahoga County Corrections center nurse         )
and/or medical staff                             )
c/o Department of Law                            )
2079 E. 9th Street                               )
Cleveland, Ohio 44115                            )
                                                 )
and                                              )

3

RAYMOND JONTONY                                    )
Cuyahoga County Corrections center nurse           )
and/or medical staff                               )
c/o Department of Law                              )
2079 E. 9th Street                                 )
Cleveland, Ohio 44115                              )
                                                   )
and                                                )
                                                   )
BETH MILLER                                        )
Cuyahoga County Corrections center nurse           )
and/or medical staff                               )
c/o Department of Law                              )
2079 E. 9th Street                                 )
Cleveland, Ohio 44115                              )
                                                   )
and                                                )
                                                   )
GRACE LAGRECA                                      )
Cuyahoga County Corrections center nurse           )
and/or medical staff                               )
c/o Department of Law                              )
2079 E. 9th Street                                 )
Cleveland, Ohio 44115                              )
                                                   )
and                                                )
                                                   )
Joseph Johnston                                    )
Cuyahoga County Corrections Center employee        )
c/o Department of Law                              )
2079 E. 9th Street                                 )
Cleveland, Ohio 44115                              )
In his individual capacity                         )
                                                   )
and                                                )
                                                   )
Ronald Channell                                    )
Cuyahoga County Corrections Center employee        )
c/o Department of Law                              )
2079 E. 9th Street                                 )
Cleveland, Ohio 44115                              )
In his individual capacity                         )
                                                   )

4

and                                                          )
                                                            )
Anter Miller                                                )
Cuyahoga County Corrections Center employee                 )
c/o Department of Law                                       )
2079 E. 9th Street                                          )
Cleveland, Ohio 44115                                      )
In his individual capacity                                  )
                                                            )
and                                                          )
                                                            )
Kurt Emerson                                                )
Cuyahoga County Corrections Center employee                 )
c/o Department of Law                                       )
2079 E. 9th Street                                          )
Cleveland, Ohio 44115                                      )
In his individual capacity                                  )
                                                            )
and                                                          )
                                                            )
John and/or Jane Doe prison guards 1-5                      )
Prison guards who knew Larry Johnson had a                  )
serious medical condition yet acted with                    )
deliberate indifference with regard to the                  )
serious medical condition.                                  )
                                                            )
and                                                          )
                                                            )
John and/or Jane Doe prison staff 1-5 who                   )
knew Larry Johnson had a serious medical                    )
condition yet acted with deliberate indifference            )
with regard to the serious medical condition.               )
                                                            )
        Defendants.                                         )
                                                            )
                                                            )

Plaintiff Marie Moderwell, a citizen of the United States, as Administrator of the

Estate of Larry C. Johnson, by and through undersigned counsel, for her Complaint against

the above-named Defendants, states and avers as follows:

## PARTIES

1.     At all times material, Plaintiff Marie Moderwell ("Plaintiff") was/is the duly appointed Administrator and personal representative of the Estate of Larry C. Johnson ("Decedent") (*See Estate of Larry C. Johnson* Case No. 2019 EST 240624, Probate Court of Cuyahoga County, Ohio), and brings this action pursuant to, among other things, 42 U.S.C. 1983, 42 U.S.C. 1395, medical negligence, State of Ohio's Wrongful Death Statute, R.C. 2125.01 *et seq.*, and Ohio Survival Statute, for the suffering of Decedent and for the benefit of Decedent's heirs, beneficiaries, and next of kin, who have suffered a loss of support, services, attention, and guidance, and who have endured mental anguish and have been otherwise damaged by the wrongful and untimely death of Decedent.

2.     Prior to Decedents untimely death, Larry Johnson was an inmate in the Cuyahoga County Corrections Center (hereinafter "CCCC"), a citizen of the United States of America residing in the state of Ohio and entitled to the protections of the Constitutions and laws of the United States of America and the State of Ohio including Due Process and the right to be free from cruel and unusual punishment.

3.     Defendant Cuyahoga County ("the County") was and is a political subdivision and unit of local government duly organized under the laws of the State of Ohio residing in the Northern District of Ohio acting under the color of law. Defendant Cuyahoga County is a "person" under 42 U.S.C. § 1983. Defendant Cuyahoga County is the employer and principal of Defendants Armond Budish, Clifford Pinkney, George Taylor, Eric Ivey, Kenneth Mills, Brandy Carney, and Thomas Tallman, and the nurses

6

and medical staff listed above and is responsible for the policies, practices, and customs of the Cuyahoga County Corrections Center.

4.      Cuyahoga County and all the Defendants listed herein operated the Cuyahoga County Corrections Center (hereinafter referred to as the "County Jail" or "CCCC") located at 1215 W 3rd St, Cleveland, OH 44113 where decedent was an inmate in June of 2018.

5.      Defendant Armond Budish ("Budish") is the Cuyahoga County Executive. At all times material, he was acting in his official capacity, within the scope of his employment, under color of law, and is responsible for the policies, practices, and customs of the Cuyahoga County Corrections Center. Budish has final policymaking authority over the policies, practices, and customs of the CCCC. He is sued in his role as county executive as well as his individual capacity.  He is personally responsible for the unconstitutional acts committed upon Larry Johnson that directly or indirectly contributed to the injuries suffered by Larry Johnson because he was personally involved.  He himself acted with deliberate indifference to Larry Johnson.  Moreover, he encouraged, authorized, approved, or knowingly acquiesced to the constitutional violations that lead to Larry Johnson's damages.

6.      At all times material Clifford Pinkney ("Pinkney"), was and is the Cuyahoga County Sherriff with responsibilities for the Cuyahoga County Corrections Center.  At all times relevant to the allegations made in this complaint, Pinkney was acting in his official capacity, within the scope of his employment, under color of law, and is responsible for the policies, practices, and customs of the Cuyahoga County Corrections

Center. Pinkney has final policymaking authority over policies, practices, and customs of the CCCC. He is sued as a County employee as well as his individual capacity.  He is personally responsible for the unconstitutional acts committed upon Larry Johnson that directly or indirectly contributed to the injuries suffered by Larry Johnson because he was personally involved.  He himself acted with deliberate indifference to Larry Johnson. Moreover, he encouraged, authorized, approved, or knowingly acquiesced to the constitutional violations that lead to Larry Johnson's damages.

7.      At all times material, Defendant George Taylor ("Taylor"), was an assistant to Pinkney and making policy decisions with regard to the Cuyahoga County Corrections Center.  At all times relevant to the allegations made in this complaint, Taylor was acting in his official capacity, within the scope of his employment, under color of law, and is responsible for the policies, practices, and customs of the Cuyahoga County Corrections Center. Pinkney has final policymaking authority over policies, practices, and customs of the CCCC. He is sued as a county employee as well as his individual capacity.  He is personally responsible for the unconstitutional acts committed upon Larry Johnson that directly or indirectly contributed to the injuries suffered by Larry Johnson because he was personally involved.  He himself acted with deliberate indifference to Larry Johnson. Moreover, he encouraged, authorized, approved, or knowingly acquiesced to the constitutional violations that lead to Larry Johnson's damages.

8.      At all times material Eric Ivey ("Ivey"), was and is the Cuyahoga County Corrections Center warden with responsibilities for the Cuyahoga County Corrections Center.  At all times relevant to the allegations made in this complaint, Ivey was acting in

8

his official capacity, within the scope of his employment, under color of law, and is responsible for the policies, practices, and customs of the Cuyahoga County Corrections Center. Ivey has final policymaking authority over policies, practices, and customs of the CCCC. He is sued as a county employee as well as his individual capacity.  He is personally responsible for the unconstitutional acts committed upon Larry Johnson that directly or indirectly contributed to the injuries suffered by Larry Johnson because he was personally involved.  He himself acted with deliberate indifference to Larry Johnson.  Moreover, he encouraged, authorized, approved, or knowingly acquiesced to the constitutional violations that lead to Larry Johnson's damages.

9.      At all times material Ken Mills ("Mills"), was the Director Cuyahoga County Corrections with responsibilities for the Cuyahoga County Corrections Center.  At all times relevant to the allegations made in this complaint, Mills was acting in his official capacity, within the scope of his employment, under color of law, and is responsible for the policies, practices, and customs of the Cuyahoga County Corrections Center. Mills has final policymaking authority over policies, practices, and customs of the CCCC. He is sued as a county employee as well as his individual capacity.  He is personally responsible for the unconstitutional acts committed upon Larry Johnson that directly or indirectly contributed to the injuries suffered by Larry Johnson because he was personally involved. He himself acted with deliberate indifference to Larry Johnson.  Moreover, he encouraged, authorized, approved, or knowingly acquiesced to the constitutional violations that lead to Larry Johnson's damages.

10.     At all times material Brandy Carney ("Carney"), was and is the Cuyahoga County Chief Safety and Protection Officer with responsibilities for the Cuyahoga County Corrections Center.  At all times relevant to the allegations made in this complaint, Carney was acting in her official capacity, within the scope of her employment, under color of law, and is responsible for the policies, practices, and customs of the Cuyahoga County Corrections Center. Carney has final policymaking authority over policies, practices, and customs of the CCCC.   She is sued as a county employee as well as her individual capacity. She is personally responsible for the unconstitutional acts committed upon Larry Johnson that directly or indirectly contributed to the injuries suffered by Larry Johnson because she was personally involved. She herself acted with deliberate indifference to Larry Johnson. Moreover, she encouraged, authorized, approved, or knowingly acquiesced to the constitutional violations that lead to Larry Johnson's damages.

11.     At all times material Defendant, The MetroHealth System ("Metro") was and is a corporation and/or other legal entity duly organized and existing pursuant to the laws of the State of Ohio, operated health care facilities including ones at the Cuyahoga County Corrections Center and held themselves out as a provider of medical care services to the public including Decedent. Metro was and is a political subdivision and unit of local government duly organized under the laws of the State of Ohio residing in the Northern District of Ohio acting under the color of law.  The County contracts with Metro to oversee and provide medical and mental health services at the Cuyahoga County Corrections Center.  Metro is a "person" under 42 U.S.C. §1983 and is responsible for the polices,

10

practices, and customs related to medical and mental health care in the Cuyahoga County Corrections Center.

12.     At all times material Thomas A. Tallman, D.O. ("Tallman"), was and is the Cuyahoga County Director of Correctional Medicine with responsibilities for the Cuyahoga County Corrections Center.  At all times relevant to the allegations made in this complaint, Tallman was acting in his official capacity, within the scope of his employment, under color of law, and is responsible for the policies, practices, and customs of the Cuyahoga County Corrections Center. Tallman has final policymaking authority over policies, practices, and customs of the CCCC. He is sued in his official capacity as well as his individual capacity.

13.     At all times material Educare Medical Staffing, LLP ("Educare") was and is a corporation and/or other legal entity duly organized and existing pursuant to the laws of the State of Ohio, and operated health care facilities and/or provided healthcare related services including finding, placing, and educating nurses at the Cuyahoga County Corrections Center.

14.     At all times material, the County, Metro, and Educare employed and/or contracted with physicians, nurses, and other medical care providers who provided medical care to Decedent, and in so doing, were acting within the course and scope of the duties of their employment and/or agency with said Defendants, such that said Defendants are liable for their conduct pursuant to the doctrine of *respondeat superior*.

15.     At all times material, the County, Metro, and Educare deprived Larry Johnson of constitutional rights and they are responsible because the deprivation stemmed

11

from official policies and customs such that they are liable pursuant to *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

16.     The County, Metro, and Educare knew of clear and persistent pattern of violations of rights at the Cuyahoga County Corrections Center, they had notice of said violations, and the approved and/or tacitly approved amounting to an official policy of inaction.  Moreover, this was the moving force or direct causal link in the constitutional deprivation.

17.     The County, Budish, Pinkney, Taylor, Ivey, Mills, Carney, Metro, Tallman, and Educare were responsible for the administration, operation, and supervision of the Cuyahoga County Corrections Center and facilities and for the promulgation, enforcement and review of rules, regulations, policies, training, customs, and practices relevant thereto, and were all acting under the color of law.

18.     The County, Budish, Pinkney, Taylor, Ivey, Mills, Carney, Metro, Tallman, and Educare, operated, maintained and/or controlled the Cuyahoga County Corrections Center where decedent was held from June 20, 2018 to June 29, 2018, during which time he was under the exclusive custody, control and care of said Defendants, including the employees and agents of said Defendants.

19.     The County, Budish, Pinkney, Taylor, Ivey, Mills, Carney, Metro, Tallman, and Educare had direct contact with decedent and knew or should have known of his serious medical condition but, under color of state law, acted with deliberate indifference to the serious medical condition and constitutional rights.   Moreover, the policies,

procedures, lack of training and costumes adopted and/or promulgated under color of state law showed deliberate indifference.

20.      At all times Material the County, Budish, Pinkney, Taylor, Ivey, Mills, Carney, Metro, Tallman, and Educare were under a non-delegable duty to ensure that detainees at the Cuyahoga County Corrections Center were not unreasonably denied medical treatment in violation of their Constitutional rights and were not deprived of other constitutional rights.

21.      At all times material the County, Budish, Pinkney, Taylor, Ivey, Mills, Carney, Metro, Tallman, and Educare, were under a non-delegable duty to promulgate policies, practices, procedures, and/or customs and to train employees to ensure that detainees at the Cuyahoga County Corrections Center were not unreasonably denied medical treatment in violation of their Constitutional rights and were not deprived of other constitutional rights.

22.      At all times Material the County, Budish, Pinkney, Taylor, Ivey, Mills, Carney, Metro, Tallman, and Educare were under a non-delegable duty to promulgate policies, practices, procedures, and/or customs and to train employees to ensure that detainees at the Cuyahoga County Corrections Center were provided with adequate, necessary, and reasonable medical and mental health care, screening, assessment, treatment, intervention, referral, and attention.

23.      At all times Material the County, Budish, Pinkney, Taylor, Ivey, Mills, Carney, Metro, Tallman, and Educare were under a non-delegable duty to provide adequate, necessary, and reasonable medical and mental health care, screening, assessment,

treatment, intervention, referral, and attention to those detained at the Cuyahoga County Corrections Center.

24.     At all times material Defendants Lori True, Robert Mosher, Dianne Lessman, Kristina Cashin, Raymond Jontony, Beth Miller, and Grace Legreca, were nurses and/or medical staff who was tasked with caring for Decedent, and under the color of law, were directly responsible for Decedents custody, supervision, and care at the Cuyahoga County Corrections Center. They had direct contact with decedent and knew or should have known of his serious medical condition but, under color of state law, acted with deliberate indifference to the serious medical condition.

25.     At all times material Defendants Anter Miller, Ronald Channell, Joseph Johnston, and Kurt Emerson, were guards and/or staff who were tasked with caring for and/or guarding Decedent, and under the color of law, were directly responsible for Decedents custody, supervision, and care at the Cuyahoga County Corrections Center. They had direct contact with decedent and knew or should have known of his serious medical condition but, under color of state law, acted with deliberate indifference to the serious medical condition.

26.     At all times material Defendants John and/or Jane Doe prison guards 1-5 where Prison guards who knew Decedent had a serious medical condition yet acted with deliberate indifference with regard to the serious medical condition and were tasked with caring for Decedent, and under the color of law, were directly responsible for Decedents custody, supervision, and care. They had direct contact with decedent and knew or should

14

have known of his serious medical condition but, under color of state law, acted with deliberate indifference to the serious medical condition.

27.     The exact names of John and/or Jane Doe Prison guards 1-5 are currently unknown to Plaintiff despite reasonable efforts to obtain them and naming them here and now would likely name them mistakenly.  They are, however, prison guards who had direct contact with decedent and knew or should have known of his serious medical condition but, under color of state law, acted with deliberate indifference to the serious medical condition.  They will know who they are when this Complaint is served upon them at the Cuyahoga County Law Department.

28.     At all times material Defendants John and/or Jane Doe prison staff 1-5 where Prison staff who knew Decedent had a serious medical condition yet acted with deliberate indifference with regard to the serious medical condition and were tasked with caring for Decedent, and under the color of law, were directly responsible for Decedents custody, supervision, and care. They had direct contact with decedent and knew or should have known of his serious medical condition but, under color of state law, acted with deliberate indifference to the serious medical condition.

29.     The exact names of John and/or Jane Doe Prison staff 1-5 are currently unknown to Plaintiff despite reasonable efforts to obtain them and naming them here and now would likely name them mistakenly.  They are, however, prison staff who had direct contact with decedent and knew or should have known of his serious medical condition but, under color of state law, acted with deliberate indifference to the serious medical

condition.  They will know who they are when this Complaint is served upon them at the Cuyahoga County Law Department.

30.     All Defendants caused and are responsible for the unlawful conduct and resulting harm by, *inter alia*, personally participating in the conduct, or acting jointly and in concert with others who did; by authorizing, acquiescing, or failing or refusing, with deliberate indifference to and reckless disregard for Larry Johnson's clearly established and known rights, to initiate and maintain adequate training, supervision, and staffing; by failing to maintain proper and adequate policies, procedures and protocols, and customs and practices; and by ratifying the unlawful conduct performed by agents and officers, deputies, medical providers, personnel, and employees under their direction, supervision, and control.

31.     All Defendants acted together and/or in concert and/or acted as joint ventures' in the operation of the Cuyahoga County Corrections Center such that they are all equally responsible for any actions or inactions at that location.

32.     At all times material, all the medical care and services that were provided to Decedent that are the subject of this Complaint were understood by Decedent and his family to be provided by the Defendants and took place at facilities owned and/or operated by the Defendants. The Defendants represented that it was them who provided care, not independent contractors.  If medical care and services were provided by an individual not named as a Defendant, and that care was negligent and below the standard of care Plaintiff and decedent understood, and there was no indication to the contrary, that the medical care and services was provided by all Defendants.

33.     To the extent that Plaintiffs Complaint requires an affidavit of merit attached hereto is an affidavit of merit.

## OVERVIEW

34.     Plaintiff seeks relief for, amongst other things, violation of the Decedent's rights secured and guaranteed by Title 42, Section 1983 of the United States Code ("U.S.C."), the Fourth, Eighth and/or Fourteenth Amendments to the United States Constitution, the laws of the United States including Due Process of law, and the laws of the State of Ohio.  Claims are also brought pursuant to *Monell v. Dept. of Soc. Servs*., 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

35.     On or about June 20, 2018 Decedent, only 51 years old, was being held in the Cuyahoga County Corrections Center and awaiting trial on allegations of petty theft.

36.     During Decedents intake assessment on June 20, 2018 there were indications that he was a suicide risk, specifically that he had attempted in the past to harm himself. In fact, he had numerous signs and symptoms of an individual contemplating suicide. The seriousness of these signs and symptoms was so obvious that even a lay person would easily recognize the necessity for a doctor's attention and/or further assessment and treatment.

37.     In addition, Decedent reported additional signs and symptoms and even stated that he was suicidal on June 23, 2018 to nurses, staff, guards and currently unknown individuals at the Cuyahoga County Corrections Center named herein who, acting under color of state law, realized a serious medical condition yet acted with deliberate indifference with regard to that serious medical condition by failing to act and failing to

provide care and/or transfer for care in a timely fashion.  There was no legitimate reason to fail to act on the part of Defendants. He did not need to be confined separately or otherwise require special security measures.  He was not a frequent requestor of unwarranted medical services.  Rather, Defendants acted with deliberate indifference. Specifically, the County, Budish, Pinkney, Taylor, Ivey, Mills, and Carney acted with deliberate indifference to a serious medical need by having a custom, policy, or practice if ignoring these types of medical conditions.  Moreover, Ivey, as warden was keenly aware and/or should have been about complaints of suicide yet did nothing.

38.     As it turned out Decedent was contemplating suicide and was reaching out for help and would have survived had that help been provided and had all Defendants named herein acted appropriately, without negligence, and without violation of his rights. Unfortunately, all Defendants did not treat Decedent and decedent attempted suicide on June 29, 2018 and later died from that attempt on July 1, 2018.

39.     Defendants Anter Miller, Ronald Channell, Joseph Johnston, and Kurt Emerson were guards and/or prison staff who were directly responsible for Decedent on June 29, 2018 and despite knowing Decedent had a serious medical condition of potential suicide acted with deliberate indifference to that serious medical need and left him alone and isolated for hours.  They failed to check on him at regular intervals.

40.     When found hanging in his cell, due to the violation of rights and deliberate indifference of the County, Budish, Pinkney, Taylor, Ivey, Mills, Carney, Defendants Anter Miller, Ronald Channell, Joseph Johnston, and Kurt Emerson there was not even a

tool, scissors, or knife to cut Larry Johnson down and this contributed to and caused his death.  It further demonstrated deliberate indifference.

41.     Thus, the claims asserted herein arise from acts, failures to act, and omissions committed, and policies, procedures, and customs in place and/or implemented or failed to be put in place or implemented, while Decedent was in the Cuyahoga County Corrections Center during which time Defendants, including but not limited to the County, Budish, Pinkney, Taylor, Ivey, Mills, Carney, Anter Miller, Ronald Channell, Joseph Johnston, and Kurt Emerson, all of whom were acting under the color of law, violated the known and clearly established Constitutional rights of Decedent to be free from the use of excessive force, cruel and unusual punishment, to due process of law, and to necessary emergency medical and mental health care and treatment and other constitutional rights.

42.     Eric Ivey is personally responsible for the unconstitutional acts committed upon Larry Johnson that directly or indirectly contributed to the injuries suffered by Larry Johnson because he was personally involved.  He himself acted with deliberate indifference to Larry Johnson.  Moreover, he encouraged, authorized, approved, or knowingly acquiesced to the constitutional violations that lead to Larry Johnson's damages.  He knew or should have known that Larry Johnson was suicidal but used denial of food and solitary confinement as a form of unwarranted punishment.  This further contributed to Larry Johnson's suicidal state.  He also had a policy of not believing inmates and not taking their threats of suicide seriously which also contributed further to Larry Johnson's suicidal state and eventual suicide.  Moreover, he, as he has been accused of doing in the past and plead guilty to, had a policy of and participated in not taking or deleting video surveillance which

happened in the case of Larry Johnson as the video that has been provided is incomplete and without relevant portions.

43.     Cuyahoga County Corrections Center is operating under a state of constant crisis, endangering the health and safety of Detainees/Inmates and staff alike on a daily basis. CCCC is underfunded, understaffed, poorly administered, and intentionally overcrowded, giving rise to a chaotic and perilous environment inside the jail walls. Detainees/Inmates are regularly denied access to adequate medical and mental health care, hygienic conditions, movement, sufficient and edible food, access to religion, and access to their attorneys. The conditions within CCCC violate the First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution. Defendants have long been on notice of the horrific conditions and constitutional deprivations occurring daily at CCCC, yet have failed to timely or effectively remedy the deplorable state of affairs.

44.     It was impossible for Decedent and/or Plaintiff to exhaust any administrative remedies at the Cuyahoga County Corrections center for these claims because Decedent died prior to being able to initiate any administrative remedies.

45.     Plaintiff seeks monetary damages (compensatory and punitive), as well as an award of costs and reasonable attorney's fees, and all such other relief as the Court deems appropriate.

## JURISDICTION AND VENUE

46.     The Court has jurisdiction over the matter pursuant to 28 U.S.C. § 1331, as certain claims asserted herein arise under the Constitution and laws of the United States, to

wit, the Fourth, Eighth and/or Fourteenth Amendments to the United States Constitution

Due Process, and 42 U.S.C. § 1983.

47.     Venue in the judicial district is proper pursuant to 28 U.S.C. §§ 1391(b)(2),

(e)(1) and (e)(2).

## FACTUAL ALLEGATIONS

48.     Defendants including but not limited to the County, Budish, Pinkney,

Taylor, Ivey, Mills, Carney, Anter Miller, Ronald Channell, Joseph Johnston, and Kurt

Emerson, are responsible for the Cuyahoga County Corrections Center (CCCC), including

the care and treatment of Detainees/Inmates in custody therein. Defendants are required to

ensure that the policies, practices, and customs of the CCCC comply with federal and Ohio

law concerning the treatment of persons in custody.

49.     Unconstitutional and deplorable conditions in the CCCC are a historic

problem. Defendants including but not limited to the County, Budish, Pinkney, Taylor,

Ivey, Mills, Carney, Anter Miller, Ronald Channell, Joseph Johnston, and Kurt Emerson,

have long been on notice of – and have even taken action to make conditions for inmates

much worse, in including but not limited to – overcrowding, unhygienic conditions,

movement restrictions, insufficient and inedible food, lack religious freedom, lack of

access to their attorneys, and inadequate medical and mental health care. Defendants have

further long been on notice of the incompetent supervision and management of the CCCC.

50.     The track record of the Defendants in operating a humane jail facility

demonstrates continued indifference and longstanding, systematically unconstitutional

operational procedures.

51.     Larry Johnson was born on February 20, 1967 and was only 51 years old at the time of his untimely death.  He had been a resident of Cuyahoga County most of his life

52.     Armond Budish became the Cuyahoga County Executive in January of 2015 and he and the County began pushing what was referred to as "regionalization" of the various jails in the County.  The idea was for the County to house detainees and/or prisoners from surrounding communities in the Cuyahoga County Corrections Center and then charge money to the various cities that sent the detainees and/or prisoners.  The stated purpose of the "regionalization" of the County's various jails was to increases revenue for the County to offset operating costs, all at eh expense of inmate rights.  Budish himself stated that "regionalization" could make the county as much as 5.5 million dollars.  A member of Budish's staff even boasted that they could make even more money if they added more detainees and/or prisoners.

53.     The Cuyahoga County Corrections Center, however, was already overcrowded and overcapacity and full of unconstitutional conditions.  In fact, sometime in 2017 then Cuyahoga County Corrections Center nursing director Marcus Harris was complaining about inmate health issues stemming from extremely low staffing levels.  He stated that too many inmates were simply not being given critical healthcare and that one nurse was doing as many as 100 intake assessments a day.  He stated that he complained to the County and nothing was done so he resigned his position.

54.     Also, sometime in 2017 the union that represented staff and guards at the Cuyahoga County Corrections Center complained to the County that there were serious

staffing level problems and health and safety problems at the Cuyahoga County Corrections Center.  The complaint was ignored and/or denied.

55.     Despite known issues with staff, safety, and healthcare at the Cuyahoga County Corrections Center from 2017-2018 and numerous years prior including conditions that lead to the death of Sean Levert all Defendants acted with deliberate indifference and went ahead with the plans for "regionalization."  This was an affirmative action that made terrible conditions even worse and that directly lead to the death of Larry Johnson.

56.     On or about March of 2018 "regionalization" began with the transfer of the City of Cleveland inmates and/or detainees to the Cuyahoga County Corrections Center. The already overwhelmed Cuyahoga County Corrections Center was further overwhelmed which affected the health and safety of the inmates.  All Defendants knew this and acted with deliberate indifference.

57.     In fact, on May 22, 2018 at a meeting of the Cuyahoga County Counsel the issues with the Cuyahoga County Corrections Center were discussed by Defendants in detail.  It was agreed that the issues were "mission critical."  There were admissions that the Cuyahoga County Corrections Center had been understaffed for "awhile."  There were also admissions that it was a "historic problem" at the Cuyahoga County Corrections Center.  Cuyahoga County Counsel member Dan Brady even stated, "it doesn't appear we know what we are doing."

58.     At the May 22, 2018 meeting a medical supervisor at the jail named Gary Brack told the County that there was a "nursing crisis" at the corrections center.  He told the County he had been requesting nurses for a long time.  It was indicated that the requests

for nurses were specifically denied by Ken Mills.  Budish and Mills then had Brack fired. Instead of attempting to remedy the problem they acted with deliberate indifference.

59.     After the May 22, 2018 Cuyahoga County Counsel members sent a letter to Budish on or about June 7, 2018 regarding the meeting and medical care in the County jail and sated "this is a life-or-death issue."   Budish responded in a letter on or about June 8, 2018 but failed to take action and thus Budish and the County acted with deliberate indifference

60.     There was a crisis at the jail, however, that all Defendants willfully, purposefully, and deliberately ignored the issues.  The took affirmative actions to make it worse.  This includes but not limited to the County, Budish, Pinkney, Taylor, Ivey, Mills, Carney, Anter Miller, Ronald Channell, Joseph Johnston, and Kurt Emerson.  Eric Ivey, as warden took additional affirmative action to make matters worse including lock down of inmates and "red zoning' of inmates and denying inmates food as punishment. These very issues contributed to and caused Larry Johnson's death.

61.     Upon information and belief on or about June 10, 2018 an inmate at the Cuyahoga County Corrections center named Theodore Carter died from lack of medical care at the Cuyahoga County Corrections center.  Defendants including but not limited to the County, Budish, Pinkney, Taylor, Ivey, Mills, Carney, Anter Miller, Ronald Channell, Joseph Johnston, and Kurt Emerson, acted with deliberate indifference in failing to conduct a post mortem mortality review of this death.   This deliberate indifference, among numerous other examples, directly lead to the death of Larry Johnson.

62.     On or about June 20, 2018 Decedent Larry Johnson was taken to the Cuyahoga County corrections center to await trial on charges of petty theft.

63.     During an "intake assessment" at the Cuyahoga County Corrections Center of Decedent Larry Johnson on June 20, 2018 nurse and Defendant Robert Mosher noted that Decedent Larry Johnson was likely a suicide risk because he had attempted to harm himself in the past.  No further assessment, treatment, or special action was taken.  This is deliberate indifference to a serious medical need.

64.     On June 23, 2018 Decedent Larry Johnson told nurse and Defendant Grace Legreca that he was "suicidal."  There is no indication that Legracca performed an assessment, evaluated further, told a doctor, or took any preventative action.  This is deliberate indifference to a serious medical need.

65.     On June 29, 2018 at about 8:30 Decedent Larry Johnson was in the medical unit at the Cuyahoga County Corrections Center after allegedly trying to steal food from the commissary.  Likely because of the well documented unconstitutional conditions regarding sanitation and food at the CCCC which include actions and direction directly taken by Eric Ivey he was then placed in "lock-up" without any assessment, treatment, referral to a doctor, or even consideration that he was a suicide risk.  This was done based on police, practice, costume and lack of training and in violation of Larry Johnson's constitutional rights.  Eric Ivey has been known to deprive food to inmates and that is likely what caused Larry Johnson to try and steal food and then be place in lockup.  Eric Ivey has also been known not to take inmates suicide contemplation seriously and this also lead to Larry Johnson being placed in "lock-up."

66.     On June 29, 2018 at about 10:00 PM Decedent Larry Johnson was found hanging in a cell and taken to MetroHealth hospital.  He was left hanging for some time due to the failure of the County, Budish, Pinkney, Taylor, Ivey, Mills, and Carney in not even having a device available to cut him down.  They all know the jail should have such a device but deliberately chose not to have it available. They were all personally involved in not having this device available.  This was a violation of Larry Johnson's rights that directly contributed to and/or caused his death.

67.     Decedent Larry Johnson died on July 1, 2018 from the injuries sustained in the Cuyahoga County Corrections Center.  He donated his organs to Lifebanc.

68.     Johnson died as a direct and proximate result of the breaches, failures, negligence, costumes, policies, lack of training and violation of various laws, and deliberate indifference by all Defendants including  the County, Budish, Pinkney, Taylor, Ivey, Mills, and Carney.

69.     From July 1, 2018 to present at least six more individuals have died in or from injuries sustained in the Cuyahoga County Corrections Center, all of which were a direct result of the deliberate indifference of Defendants set forth above.

70.     Plaintiff has requested a complete set of documents, records, and information from the County through official records requests and letters and, to date, the County has refused to provide a full and complete response, other than to provide his medical records. Upon information and belief relevant records have been destroyed and thus a claim for spoliation of evidence against Defendants is warranted. For instance, as is

the case in other cases involving Eric Ivey Plaintiff has received incomplete video surveillance.

71.     The judges of the Cuyahoga County Court of Common Pleas, however, have publicly stated that "The County's indifference to the dangers created by failing to meet the needs of a very fragile and volatile prison population must end."  They outlined how the "shortage of staffing in the jail contributes to a lack of identification of people who need medical and psychiatric care upon booking."

72.     Moreover, the U.S. Department of Justice authored a report regarding the conditions in the Cuyahoga County Corrections Center during the time of Decedent's stay and found, among other things, the following:

    a.      The facility is unsatisfactory/at risk.

    b.      Noncompliance with the Federal Performance Based Detention Standards were identified in all functional areas.

    c.      There is "an inadequate medical program."

    d.      There is no documentation available for review to identify life safety issue or to verify or discredit CCCC contributory factors.

    e.      The facility is operating over the American Correctional Associations rated capacity.

    f.      The facility was short 96 correctional officers.

    g.      The facility was short 13 medical staff.

    h.      The facility had inadequate or missing policies and procedures.

    i.      Warden's and assistant wardens do not visit the facility.

j.      Training of staff is inadequate and management and supervisory staff only received 8 hours of training annually despite the fact that the FPBDS requires 24 hours annually after the first year.

k.      The medical staff had expired CPR certifications; four have expired licenses; one licensed practical nurse has no license on file; one medical technical assistant did not have a diploma; two Educare nurses had partial CPR certifications; and one license practical nurse and one nurse practitioner have board actions on their verification but no documentation of the disposition. There was no job description for the mental health nurse practitioner.

l.      Failure to perform post mortality reviews to identify the life safety issues and verify or discredit CCCC contributory factors.

m.      80% of detainees and inmates express concern to the U.S. Marshals concerning healthcare, including mental health services.

n.      100% of detainees and inmates fear retaliation by or from the security response team, staff, or other correctional officer staff members.

o.      The intentional and deliberate use of food as a punitive measure.

p.      denial of detainees and inmates ability to perform basic hygiene needs and denial of inmates access to showers, telephones and recreation due to the lock down system known as the "red zone" for periods of 27 hours or more in their cells.

q.      failure to develop a clear plan to return a detainee to less restrictive conditions as promptly as possible.

r.      failure to maintain records and housing unit logs and detainee interviews and records of disciplinary actions, grievances, and other investigative documents related to inmate complaints and/or concerns.

s.      Sanitation at the mental health dispensary was minimally acceptable.

t.      comprehensive medical and mental health appraisals are not conducted within 14 calendar days of the inmates arrival.

u.      there is a backlog in entering "kites" or request for medical treatment into the electronic medical record.

v.      medical assessment of inmates before they were placed in restrictive housing or cells were performed on a limted basis or not performed at all.  Nor was a face to face meeting conducted at least once a week as required.

w.      clinical mental health treatment is not provided in restrictive housing nor is there a face to face assessment conducted at least once a week.

x.      staff are not utilizing use of force tools and techniques to ensure staff and detainee safety.

29

73.     Decedent was detained at the Cuyahoga County Corrections Center from June 20, 2018 to June 29, 2018.  During these periods of detention, he was within the continuous exclusive custody, supervision, and control of All Defendants including but not limited to the County, Budish, Pinkney, Taylor, Ivey, Mills, Carney, Anter Miller, Ronald Channell, Joseph Johnston, and Kurt Emerson, and the Corrections Officers and medical staff Defendants and other Defendants named herein.  All of the items listed in paragraph 68 exhibited deliberate indifference and were a direct and proximate cause of Larry Johnson's death.

74.     During his period of detention the Defendants including but not limited to the County, Budish, Pinkney, Taylor, Ivey, Mills, Carney, Anter Miller, Ronald Channell, Joseph Johnston, and Kurt Emerson, purposefully, maliciously, wantonly and/or with deliberate indifference to and/or callous and reckless disregard for his rights, health, and safety, as demonstrated above used, participated in, or authorized the use of excessive force and/or failed to provide medical care, failed to prevent or acquiesced in the disregard for the medical condition of Larry Johnson for an excessive period of time while he struggled with mental health issues and suicide.

75.     At all times relevant, it was the policy, practice, custom and/or procedure of All Defendants, including but not limited to the County, Budish, Pinkney, Taylor, Ivey, Mills, Carney, Anter Miller, Ronald Channell, Joseph Johnston, and Kurt Emerson, and/or their employees who have final decision-making authority, to ignore or disbelieve mental health complaints or mentions of suicide, to deny emergency medical care, refuse to acknowledge the request by inmates to be seen for a medical evaluation and to disregard

the written requests by inmates for medical treatment. The policy, practice, custom and/or procedure constitutes deliberate indifference to and/or a callous disregard for the known and clearly established Constitutional due process rights of Larry Johnson and other detainees in the custody of the Cuyahoga County Corrections Center all of which shocks the conscience and violates traditional notions of decency.

76.     At all times relevant, All Defendants including but not limited to the County, Budish, Pinkney, Taylor, Ivey, Mills, Carney, Anter Miller, Ronald Channell, Joseph Johnston, and Kurt Emerson, failed and/or refused to adequately train and/or supervise their deputies, officers, and employees, in the reasonable and appropriate medical care, the denial of emergency medical care, refused to acknowledge the request by inmates to be seen for a medical evaluation and the appropriate handling of the written requests by inmates for medical treatment.

77.     At all times relevant, All Defendants including but not limited to the County, Budish, Pinkney, Taylor, Ivey, Mills, Carney, Anter Miller, Ronald Channell, Joseph Johnston, and Kurt Emerson, failed to provide medical treatment related training policies, customs, practices, and/or procedures and/or they were so deficient, inadequate and/or unreasonable that violations of Constitutional rights of detainees, including Larry Johnson, were certain and likely to, and in fact did, occur. These policies, practices, customs and/or procedures constitute deliberate indifference to and/or a callous disregard for the known and clearly established Constitutional due process rights of Larry Johnson, and other detainees in the custody of the Cuyahoga County Corrections Center, all of which shocks the conscience and violates traditional notions of decency.

31

78.     It was impossible for Decedent and/or Plaintiff to exhaust any administrative remedies for these claims because Decedent was extremely ill and then died prior to being able to initiate any administrative remedies.

**FIRST CLAIM FOR RELIEF**

**(Violation of 42 U.S.C. § 1983 Against All Defendants, including, but not limited to the County, in its individual and official capacity, and, Budish, Pinkney, Taylor, Ivey, Mills, Carney, Anter Miller, Ronald Channell, Joseph Johnston, and Kurt Emerson, in their individual Capacity for Failure to Supervise, Train, and Take Corrective Measures Causing Constitutional Violations of the Eighth and Fourteenth Amendments.)**

79.     Plaintiff restates and incorporates the previous paragraphs by reference as if fully rewritten herein.

80.     Plaintiff's Decedent was a citizen of the United States.

81.     At all times material Decedent had a serious medical and mental health needs that were known and/or should have been known to all Defendants including but not limited to the County, Budish, Pinkney, Taylor, Ivey, Mills, Carney, Anter Miller, Ronald Channell, Joseph Johnston, and Kurt Emerson.

82.     At all times material, all Defendants including but not limited to the County, Budish, Pinkney, Taylor, Ivey, Mills, Carney, Anter Miller, Ronald Channell, Joseph Johnston, and Kurt Emerson, were acting under color of state law in their various roles.

83.     All Defendants including, but not limited to the County, Budish, Pinkney, Taylor, Ivey, Mills, and Carney knew of a custom, propensity, and pattern at times relevant to the allegations herein, as described above, that among Corrections Deputies and Nursing staff there was a pattern for failing and/or refusing to provide prompt and competent access

32

to and delivery of medical and mental health assessment, evaluation, care, intervention, referral, and treatment, to detainees, including Larry Johnson.  All Defendants including, but not limited to the County, Budish, Pinkney, Taylor, Ivey, Mills, and Carney disregard of the knowledge, or failure and/or refusal to adequately investigate and discover and correct such customs and propensities, proximately caused the violation of the Constitutional rights of Larry Johnson as alleged herein.

84.    Plaintiff is informed and believes and thereon alleges that prior to the incident alleged herein, All Defendants including, but not limited to the County, Budish, Pinkney, Taylor, Ivey, Mills, and Carney and other nursing staff, deputies, officers, employees, agents, medical directors, medical and mental providers, and doctors, acting under their authority as officers and/or within the course and scope of their employment, committed similar acts of:

   a. Failing and/or refusing to provide timely adequate access to and delivery of mental health and medical care, assessment, evaluation, intervention, referral, and treatment for detainees with obvious and/or known serious mental and medical health conditions and needs;

   b. Failing and/or refusing to provide adequate housing and properly classify detainees so that they will have timely and adequate access to and delivery of necessary and indicated medical and mental health assessment, evaluation, care, intervention, referral, and treatment;

33

    c.       Failing and/or refusing to designate certain types and modalities of force as medically contraindicated for certain detainees whom have known, or knowable, serious medical and mental health conditions; and

    d.       Failure and/or refusal to provide adequate monitoring and housing for detainees who present risk of serious physical and/or mental harm and death.

85.    Plaintiff is informed and believes and thereon alleges that all Defendants including, but not limited to the County, Budish, Pinkney, Taylor, Ivey, Mills, and Carney knew, or should have known, of their pattern or practice of unconstitutional violations, or the existence of facts, practices, customs and/or habits, which create the strong potential for unconstitutional acts, and all Defendants including, but not limited to the County, Budish, Pinkney, Taylor, Ivey, Mills, and Carney had a duty to supervise, train, and instruct their subordinates to prevent similar acts to other detainees, including Larry Johnson, but failed and/or refused to take reasonable and necessary steps to properly supervise, train, instruct, or investigate officers, physicians, nurses, medical and mental health personnel and as a direct and proximate result, Larry Johnson was harmed and suffered death in the manner cause by the patterns or practices.

86.    At all times relevant, All Defendants including, but not limited to the County, Budish, Pinkney, Taylor, Ivey, Mills, and Carney had the duty:

    a.       To train, supervise, and instruct deputies, officers, nurses, physicians, medical and mental health personnel, and other agents and

employees to ensure that they respected and did not violate federal Constitutional and statutory rights of detainees with regard to providing necessary medical care and the reasonable and appropriate use of force;

b.      To objectively investigate incidents of in-custody injury, deaths, inadequate classifications and contraindicated housing, denials of prescription medications, and incidents of in-custody use of excessive force and uses of contraindicated force, and to take necessary remedial action;

c.      To provide access to and delivery of timely competent medical and mental health assessment, evaluation, intervention, referral, care, treatment, follow-up, and attention to medically and/or mentally ill detainees;

d.      To monitor the medical and mental health care and treatment provided to mentally and physically ill detainees;

e.      To monitor and periodically review the adequacy of medical and custodial staffing to ensure adequacy of medical and mental health care, treatment, intervention, referral, and attention rendered to mentally and physically ill detainees;

f.      To monitor and periodically review the classification and housing of mentally and physically ill detainees to ensure they are properly classified and housed;

g.      To comply with the statutory guidelines and the standard of care protecting detainees and/or custodial setting;

h.     To adequately discipline and establish reasonable procedures to document and correct past violations, and to prevent future violations of Constitutional right of detainees, by not condoning, ratifying and/or encouraging the violation of Larry Johnson's and other detainees' constitutional rights; and

i.      To adequately and periodically train custodial and medical and mental health staff on understanding, recognizing, reporting and responding to issues of physical and mental health episodes/symptoms of detainees.

87.     All Defendants including, but not limited to the County, Budish, Pinkney, Taylor, Ivey, Mills, and Carney acted with deliberate indifference towards inmates by:

a.     Failing and/or refusing to train, supervise, and instruct deputies, officers, nurses, physicians, medical and mental health personnel, and other employees, on the violations of the Constitutional rights of Jodi Coats and other detainees;

b.     Failing and/or refusing to objectively investigate in-custody injury, deaths, inadequate classifications and contraindicated housing, denials of prescription medications, and incidents of in-custody use of excessive force and uses of contraindicated force, and failing and/or refusing to take necessary remedial action;

c.     Failing and/or refusing to provide timely competent medical and mental health assessment, evaluation, care, treatment, referral, and

intervention for mentally and physically ill detainees, which resulted in serious injury or death;

d. Failing and/or refusing to monitor a detainee's medical and mental health condition, which resulted in serious injury or death;

e. Failing and/or refusing to monitor and periodically review the quality of medical and mental health assessment, evaluation, care, treatment, referral, and intervention provided to mentally and physically ill detainees;

f. Failing and/or refusing to monitor and periodically review the timelines and adequacy of medical and mental health assessment, evaluation, care, treatment, referral, and intervention rendered to mentally and physically ill detainees;

g. Failing and/or refusing to monitor and periodically review the classification of detainees to ensure they are properly housed;

h. Failing and/or refusing to comply with the statutory guidelines and the standards of care protecting detainees and/or in the custodial setting;

i. Failing and/or refusing to adequately discipline and establish reasonable procedures to documents and correct past violations, and to prevent future violations of Constitutional rights of detainees by not condoning, ratifying, and/or encouraging the violation of Larry Johnson's and other detainees' constitutional rights;

j.   Failing and/or refusing to adequately and periodically train custodial and medical and mental health staff on understanding, recognizing, reporting, and responding to issues of physical and mental health episodes/symptoms of detainees; and

k.   Overseeing, supervising, authorizing, approving of and/or ratifying the medical and mental health care and access thereto provided and not provided to Larry Johnson.

88.     All Defendants including, but not limited to the County, Budish, Pinkney, Taylor, Ivey, Mills, and Carney are personally responsible for the unconstitutional acts committed upon Larry Johnson that directly or indirectly contributed to the injuries suffered by Larry Johnson because they was personally involved.  They themselves acted with deliberate indifference to Larry Johnson.  Moreover, they encouraged, authorized, approved, or knowingly acquiesced to the constitutional violations that lead to Larry Johnson's damages.

89.     As a direct and proximate result of the conduct of All Defendants including, but not limited to the County, Budish, Pinkney, Taylor, Ivey, Mills, and Carney caused Larry Johnson to be forced to endure and suffer extreme physical, mental and emotional pain and suffering, death, and pecuniary loss, including medical expenses, funeral and burial expenses, and lost earning and/or benefits.

**WHEREFORE**, Plaintiff prays for judgment against All Defendants in their individual and official capacity and/or against the County, for:

a.      Compensatory damages in an amount in excess of the jurisdictional

limit of $75,000 that will fully and fairly compensate Plaintiff, the Estate of

Larry Johnson, and Larry Johnson's next of kin;

b.      Costs of suit and reasonable attorney's fees pursuant to 42 U.S.C §

1988; and

c.      All such relief which the Court deems appropriate.

### SECOND CLAIM FOR RELIEF

**(Violation of 42 U.S.C. § 1983 Against All Defendants, including, but not limited to the County and Budish, Pinkney, Taylor, Ivey, Mills, and Carney in their individual capacity, for Custom, Policy, failure to train employees or Practice Causing Constitutional Violations of the Eighth and Fourteenth Amendments, a Monell Claim pursuant to *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)).**

90.      Plaintiff restates and incorporates the previous paragraphs by reference as if fully rewritten herein.

91.      At all times material, All Defendants, including, but not limited to the County, Budish, Pinkney, Taylor, Ivey, Mills, and Carney promulgated and maintained a de facto unconstitutional custom, policy, or practice of permitting, ignoring, and condoning and/or encouraging officers, deputies, nurses, physicians, medical and mental health personnel, and other employees and agents to use contraindicated and/or excessive force, or to participate and/or acquiesce  in the denial of medical care detainees, including Larry Johnson, all of which shocks the conscience and offends traditional notions of decency, including, but not limited to:

a.      The use of knowing denial of mental health and medical care, and

conduct purely for punitive purposes;

39

b.    The failure and/or refusal to provide timely and adequate mental health and medical evaluations of detainees, including Larry Johnson; and

c.    The failure and/or refusal to provide timely and adequate medical and mental health assessment, evaluation, intervention, referral, treatment, and care as described herein.

d.    The failure to train employees on the proper provision of medical treatment and/or psychological treatment and suicide prevention.

e.    The failure to perform post-mortem reviews of death in the Cuyahoga County Corrections Center.

f.    The use of force tools and techniques to ensure detainee safety were not followed at CCCC as it relates to the threats made against Larry Johnson.

92.    These customs, policies and/or practices were the direct and proximate cause of the Constitutional violations visited upon, and the injuries and death of Larry Johnson. The Corrections Medical Officer Defendants acting in accordance with these customs, policies, or practices used excessive, unreasonable, outrageous and impermissible denial of medical treatment and/or otherwise acted in a manner that shocks the conscience and offends traditional notions of decency.   This was all deliberate indifference and a substantial contributing factor to Larry Johnson's death.

93.    At all times relevant, the policies, customs and/or procedures referenced in this Complaint were facially and/or de facto violative of the clearly established and known rights of detainees at the Cuyahoga County Corrections Center, including Larry Johnson,

and their implementation constitutes deliberate indifference to and/or reckless and callous disregard for the Constitutional rights of detainees, secured by the Eighth and Fourteenth Amendment of the United States Constitution,  including the right to due process of law, life, liberty, and to be free from excessive and unreasonable uses of force, and to be free from cruel and unusual punishment which shook the conscience and offend traditional notions of decency.

94.    At all times relevant, the policies, customs and/or procedures referenced in this Complaint were applied in such a manner and known by All Defendants to be applied in such a manner, that violations of the Constitutional rights of detainees were substantially certain to, and did, occur. Furthermore, the application and/or misapplication of these policies, practices, and/ or procedures amount to violations of the Constitutional rights of Larry Johnson, secured by the Eighth and Fourteenth Amendments to the United States Constitution, including the right to due process of law, life, liberty, and to be free from excessive and unreasonable uses of force and from cruel and unusual punishment which shock the conscience and offend traditional notions of decency.

95.    The Defendants failure to perform post-mortem reviews prior and subsequent to the June 10 death of an inmate constitutes deliberate indifference to the rights and safety of inmates and was a substantial contributing factor to the death of Larry Johnson.

96.    The Defendants failure to train its employees including corrections officers and nursing staff regarding policies and procedures related to the investigation of threats that lead to the complaints of suicidal ideation and to take measures to treat inmates with

said suicidal ideation. This constitutes deliberate indifference and was a substantial contributing factor in the death of Larry Johnson.

   **WHEREFORE**, Plaintiff prays for judgment against All Defendants, for:

     a.  Compensatory damages in an amount in excess of the jurisdictional limit of $75,000 that will fully and fairly compensate Plaintiff, the Estate of Larry Johnson, and his next of kin, for their injury, damage, and loss;

     b.  Costs of suit and reasonable attorney's fees pursuant to 42 U.S.C. § 1988; and

     c.  All such other relief which the Court deems appropriate.

### THIRD CLAIM FOR RELIEF

**(Violation of 42 U.S.C. § 1983 Against all Defendants including, but not limited to the County, Budish, Pinkney, Taylor, Ivey, Mills, and Carney for cruel and unusual punishment for failure to provide reasonably adequate medical care in Violation of the Eighth and Fourteenth Amendments.)**

   97.  Plaintiff restates and incorporates the previous paragraphs by reference as if fully rewritten herein.

   98.  Plaintiff's Decedent was a citizen of the United States.

   99.  At all times material Decedent had serious medical and mental health needs that was known to all Defendants including, but not limited to the County, Budish, Pinkney, Taylor, Ivey, Mills, and Carney.

   100.  At all times material, all Defendants including, but not limited to the County, Budish, Pinkney, Taylor, Ivey, Mills, and Carney were acting under color of state law.

42

101.    On June 20, 2018 Larry Johnson was a known suicide risk because of his history of self-harm, yet this was deliberately ignored, and no further action was taken to assess this risk.   Then again on June 23rd, Larry Johnson indicated he was suicidal, but no further action was taken to assess the risk and further failed to investigate the allegations that led to his suicide risk.  All Defendants including, but not limited to the County, Budish, Pinkney, Taylor, Ivey, Mills, and Carney are personally responsible for the unconstitutional acts committed upon Larry Johnson that directly or indirectly contributed to the injuries suffered by Larry Johnson because they were personally involved.  They themselves acted with deliberate indifference to Larry Johnson.  Moreover, they encouraged, authorized, approved, or knowingly acquiesced to the constitutional violations that lead to Larry Johnson's damages.

102.    The acts and omissions of all Defendants, including, but not limited to the County, Budish, Pinkney, Taylor, Ivey, Mills, and Carney including, but not limited to, with deliberate indifference ignoring the complaint of Larry Johnson and knowingly depriving Larry Johnson of the medical and mental health care needs while confined, neglecting his cries for help, participating in the forgoing acts and omissions, ordering, authorizing, directing, supervising, approving and/or ratifying the foregoing acts and omissions, and acquiescing, failing and/or refusing to prevent the foregoing acts and omissions, constitute conduct under the color of state law which deprived Larry Johnson of his clearly established and known rights, privileges, and immunities secured by the Constitution and laws of the United States.

103.    As a direct and proximate result of the foregoing conduct All Defendants, including, but not limited to the County, Budish, Pinkney, Taylor, Ivey, Mills, and Carney deprived Larry Johnson of his clearly established and known rights under the Eighth and Fourteenth Amendments of the United States Constitution. More specifically, all Defendants, including, but not limited to the County, Budish, Pinkney, Taylor, Ivey, Mills, and Carney deprived Larry Johnson of: (1) his right to be free from a deprivation of life and liberty without due process of law; and (2) his right to be provided with adequate medical mental health care and to free from the use of excessive, outrageous, and unreasonable force, which shocks the conscience and offends traditional notions of decency.

104.    As a direct and proximate result of all Defendants including, but not limited to the County, Budish, Pinkney, Taylor, Ivey, Mills, and Carney violations of Larry Johnson's Constitutional rights, which resulted in his wrongful and untimely death, Larry Johnson was forced to endure and suffer extreme physical, mental, and emotional pain and suffering, death, and pecuniary loss, including medical expenses, funeral and burial expenses, and lost earning and/or benefits.

**WHEREFORE**, Plaintiff prays for judgment against all Defendants, for:

a.      Compensatory damages in an amount in excess of the jurisdictional limit of $75,000 that will fully and fairly compensate Plaintiff, the Estate of Larry Johnson, and his next of kin, for their injury, damage, and loss;

b.      Punitive damages in an amount that will serve to adequately punish and deter the conduct alleged herein;

c. Costs of suit and reasonable attorney's fees pursuant to 42 U.S.C. § 1988; and

d. All such other relief which the Court deems appropriate.

## FOURTH CLAIM FOR RELIEF

### (Medical Malpractice against Metro, Educare Medical Staffing, Tallman, and the nurses and medical staff listed above)

105. Plaintiff restates and incorporates the previous paragraphs by reference as if fully rewritten herein.

106. The Metro, Educare Medical Staffing, Tallman, and nurses and medical staff listed above Defendants had a duty to provide thorough medical care to Larry Johnson including but not limited to testing, treatment and diagnoses.  All Defendants failed to do so.

107. The Metro, Educare Medical Staffing, Tallman, and nurses and medical staff that evaluated, saw, and treated Larry Johnson did not properly asses and/or evaluate his serious risk for suicide and/or self-harm and, in fact, ignored his serious risk for suicide and/or self-harm.  This was negligent and below the standard of care.

108. As a result of the failures and negligence Larry Johnson died.

109. During all of the times alleged herein Plaintiff was receiving and/or supposed to be receiving medical treatment from Metro, Educare Medical Staffing, Tallman and the nurses and medical staff listed above.

110. The care, treatment, monitoring, and/or services provided to Larry Johnson was negligent and below the standard of care.

111. Metro and Educare and the County were negligent in failing to employ and/or contract with individuals who could and would treat Larry Johnson with the same level of

care that other reasonably careful medical providers and physicians would provide under the same circumstances.

112.    Metro, Educare, and the County themselves and/or through their employees and/or agents, including but not limited to the individual physician Defendants, failed to properly provide medical services, failed to provide appropriate staffing, and failed to have proper protocols and policies in place.

113.    Metro, Educare, and the County were negligent in failing to employ individuals who could and would treat Larry Johnson in accordance with accepted practices of health care facilities.

114.    Metro, Educare, and the County failed to establish appropriate standards for physicians, nurses, aides, and/or other medical providers who were employed by and/or were in a contractual relationship with Metro, Educare, and the County to provide medical care to inmates.

115.    Metro, Educare, and the County negligently failed to establish appropriate standards for physicians, nurses, aides, and/or other medical providers who were employed by and/or were in a contractual relationship with Metro, Educare, and the County to provide medical care to inmates.

116.    As a direct and proximate result of the collective and/or individual negligence of Metro, Educare, and the County jointly and/or severally, by themselves and/or through their employees and/or agents, Larry Johnson was not provided proper medical testing commensurate with the requisite standard of care and has suffered damages.

**WHEREFORE**, Plaintiff prays for judgment against the Metro, Educare, County, and individual nurses and medical providers listed above for:

a.  Compensatory damages in an amount in excess of the jurisdictional limit of $75,000 that will fully and fairly compensate Plaintiff, the Estate of Larry Johnson, and Larry Johnson's next of kin;

b.  Costs of suit and reasonable attorney's fees pursuant to 42 U.S.C § 1988; and

c.  All such relief which the Court deems appropriate

Respectfully submitted,

*/s/ Thomas D. Robenalt*
Thomas D. Robenalt (0055960)
John Colan (0081778)
**THE ROBENALT LAW FIRM, INC.**
23550 Center Ridge Rd., Ste. 103
Westlake, Ohio 44145
Phone: 216-223-7535
Fax: 216-307-2352
Email: trobenalt@robenaltlaw.com
          jcolan@robenaltlaw.com

*Attorneys for Plaintiffs*

## **JURY DEMAND**

Plaintiffs hereby demand a trial by jury on all triable issues.

*/s/ Thomas D. Robenalt*

Thomas D. Robenalt (0055960)
John Colan (0081778)

*Attorneys for Plaintiffs*
